[No. 21522. Department One. January 17, 1929.]

ALVIS H. STUBBE, *by his Guardian ad litem, Albert H. Stubbe, Respondent,* v. EMMA BAKER, *Appellant.*[1]

[1]Reported in 273 Pac. 732.

Hanna, Miller & Hanna, for appellant.

David Herman and Williams & Cornelius, for respondent.

MITCHELL, C. J.—Mrs. Emma Baker, a widow, owned a farm in Whitman county situated some two or three miles from her residence. From 1919 to 1927, both years inclusive, it was occupied by a tenant from year to year. The house on the farm was destroyed by fire, after which she built a new house some distance from the site of the one destroyed, and to supply the new house with water she planned the digging of a cistern.

The construction of the cistern was undertaken in June, 1927, under the immediate supervision of her son, Leo Baker, who employed Alvis H. Stubbe to assist in the work of excavation. A few hours after Alvis had commenced work, earth caved in and severely injured him.

By his guardian *ad litem,* he brought this action against Mrs. Baker, alleging that his injuries were caused by negligence for which she was responsible. She denied liability and all charges of negligence, and affirmatively pleaded assumption of risk and contributory negligence, which affirmative matter was denied by a reply. The trial resulted in a verdict for the plaintiff, and the defendant has appealed from a judgment on the verdict.

Leo Baker was twenty-four years of age and at all times had lived at his mother's home, going to school a

part of the time and in later years helping her in many ways and hiring out by the day on public road work. He had no experience in the construction of cisterns. He engaged Alvis Stubbe, a neighbor boy less than sixteen years of age, to help dig the cistern. Alvis was wholly unacquainted with such work and was in no way cautioned, warned or instructed by Leo or any one else, at or before he was hurt, of any risk or danger.

The construction was in the ordinary way, that is, by the use of a windlass, rope and bucket handled by man power to remove the earth. The cistern was jug-shaped, the neck or upper portion being two and three-fourths to three feet across and estimated by various witnesses from three to four and one-half feet deep, and then shouldered or hollowed out until it was about eight feet below the surface of the ground, without any artificial means of supporting the earth. This was the condition of the excavation at the time plaintiff was employed to assist in the work.

The windlass was operated immediately over the excavation, and there was substantial evidence that it weighed over three hundred pounds and worked roughly, having a tendency to jar the ground upon which it rested. Some of the witnesses thought the bucket used for taking out earth was of three gallons capacity, while others said five gallons.

There was substantial evidence that the quality and condition of the soil rendered it highly liable to cave, though the testimony on behalf of the appellants in this respect was to the contrary. Upon the boy being let into the excavation, by directions of his employer, to work, by the use of the windlass considerable earth caved in from about the shoulder of the excavation, completely surrounding and covering the boy's body to a height above his waist, mangling and crushing one of his legs so badly that it was necessary that it be

amputated. After this suit was brought, Leo paid Alvis for half a day's work.

That there was proof of negligence, on the part of some one, that caused the injuries complained of, sufficient to take the case to the jury, there can be no serious question, we think. Indeed, appellant's main contention is that she was in no way responsible, that she had made an oral agreement with her son Leo to lease the premises to him for a year, commencing about October 1, 1927, pursuant to which he was constructing a cistern on his own account and at his own expense; that he devised the plan of excavation and was carrying on the work, without any assistance from her, upon his own responsibility and for his own convenience as a prospective tenant of the premises. Substantial testimony was introduced in support of these allegations of the appellant, and the jury was fully instructed on her theory of the case.

On the contrary, there was testimony tending to show that Leo was acting for her in building the cistern. He was and at all times had been a member of her family, paying no board and helping her whenever called on.

Appellant admitted that, several months prior to the accident, she planned to have the cistern built as an improvement on her farm, and to that end had talked with one Gibson in Spokane, he being an experienced builder of cisterns, stating that she would let him know later. Thereafter she told a sister of his to tell him that she was still thinking of building the cistern, and that if he came down her way she would like to see him about it. The message was delivered to Gibson, and he testified that appellant had told him at Spokane she wanted him to build the cistern; that his sister delivered appellant's message to him, to call, at which time he was engaged elsewhere building a cis-

tern, and that about a week after receiving her message he went down to see her. He further testified as follows:

"Q. What did you say to her, Mr. Gibson? A. Well, I told her I come down to build the cistern for her. Q. What did she say? A. Well, she said that the boys had been talking to Jean Jacobs and I had built one for him and Leo thought he could build one and went ahead digging it and the boy got hurt; the Stubbe boy was helping him and he got hurt. She said she wished they had waited until I had come, the way it turned out. Q. Was there anything said about your finishing it for them or for her? A. Yes, sir, she spoke to me about going out and looking it over and seeing what I would take to finish it for her. Q. You didn't finish it, however? A. No, I went out and looked at it and told her I would sooner build a new one about 50 feet further over on the little ridge that was there; the ground was summer-fallow and clay right at the top of the ground, and I generally dig them in solid clay when I dig them. Q. Did you give her a price? A. No, I didn't; she said she might postpone it and not dig it then."

The mother of the injured boy testified that after the accident the appellant, upon referring to it, said to her:

"She was sorry that this happened; that she intended to get an experienced man to do this work and Leo wouldn't wait."

The testimony of Gibson as to the conversation when he called to do the work was attempted to be explained away by her version of it, and the testimony of Mrs. Stubbe was denied, though appellant admitted that she talked with Mrs. Stubbe at the latter's home on the occasion mentioned.

Under all the facts and circumstances, we think the case was one properly to be given to the jury, and that appellant's several motions, timely made, chal-

lenging the sufficiency of the evidence as a matter of law, were properly denied.

Errors are assigned upon instructions to the effect that, if the jury found from the preponderance of the evidence that the plaintiff "was working on defendant's premises and for her benefit" at the time of the injuries, there was a presumption that she employed him, which presumption, if they so found, might be rebutted by all the facts and circumstances in the case; that the question of who was the real employer of the plaintiff was not necessarily determined by the evidence showing that some particular person requested plaintiff to do the work, or that some particular person paid him for his work, but that evidence of that character should be considered in arriving at a verdict and determining who the employer was.

And further, along the same line, the following instruction was given:

"I instruct you that if you find from the evidence that defendant was constructing said cistern and was the employer of plaintiff, but had entrusted the employment of workmen therefor, and the directions with reference to the construction of said cistern to her son, Leo Baker, then I instruct you that said Leo Baker was defendant's agent, and any negligence on the part of him with reference to the construction of the cistern, due to which plaintiff received his injuries, was negligence of the defendant; and in determining the question as to whether or not said Leo Baker was the defendant's agent in the prosecution of said work, you have a right to take into consideration all the evidence in the case."

The principal argument against the instructions is aimed at that portion upon the subject of presumption. But the instruction in this respect involved or embraced the necessity of the jury finding that the plaintiff "was working for the benefit of the defendant."

And again, the whole controversy in this respect was whether Leo Baker was doing the work on his own responsibility and for his own convenience and benefit, or as the agent of his mother and for her benefit. True, the respondent had no direct testimony that Leo was asked or told by his mother to construct the cistern for her, but certainly a fair reasonable inference from all the facts and circumstances justified the jury in finding that was precisely what happened—that is, that Leo was acting as an agent of his mother. The objection to this instruction is without merit in our opinion.

Again it is said that these instructions were erroneous because they failed to embrace or recognize appellant's affirmative defense and the facts testified in support of it. That, however, was taken care of fully in other portions of the instructions.

■ The jury was further instructed as follows:

"I instruct you that if you should find that the injuries received by plaintiff were due to dangers in the construction of said cistern, which were usual and ordinary risks and hazards of said work, nevertheless that this will not prevent plaintiff from recovering in this action, if you should further find from the evidence that said plaintiff, by reason of his youth and lack of experience, was not able to comprehend and understand the dangers and risks, if any, of said employment, and was not warned thereof."

It is claimed this instruction was erroneous and prejudicial because there was no evidence of the lack of appreciation of danger on the part of the plaintiff. However, he testified that he was between fifteen and sixteen years of age, that he had never worked on a cistern before, had never seen one dug and knew nothing about the method of digging them, and there is no claim that he was in any way warned or cautioned.

Under fairly similar circumstances, a like instruction was approved in the case of *Gage v. Springston Lumber Co.*, 53 Wash. 108, 101 Pac. 501. We take it to be the general rule, under such circumstances as are found in this case, intended as a guide to the jury in considering the facts.

Other assignments of error refer to the refusal of the court to give certain requested instructions. We think they need not be set out in this opinion.

Upon considering them, we are satisfied that the matters embraced within them, properly expressed, were sufficiently covered by the instructions given. In this respect it may be stated that it was alleged in the complaint that the excavation was done in such manner as to leave a square shoulder. The testimony of the different witnesses varied as to the suddenness of the hollowing out of the excavation, commencing at the shoulder. Appellant requested an instruction that, if the jury found the shoulder was sloping, instead of square, their verdict should be for the defendant.

The argument appears to be too technical. The proof was in substantial conformity to the allegation in the complaint. Witnesses on both sides testified as to the character of the slope. The substantial thing in this respect was the amount of overhanging earth without any artificial support, considered in connection with the liability of the soil to crumble and cave in while burdened with the operation of the windlass. This subject was well and sufficiently covered by the instructions that were given.

The instructions in this case altogether were clear, full and complete. They seem to have covered the issues presented by the facts under the pleadings in an entirely proper and satisfactory manner.

Affirmed.

FULLERTON, TOLMAN, and BEALS, JJ., concur.